# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

YAHAYA MBEYU,     )
          )
   Plaintiff,     )
          )
VS.         )    No. 14-2432-STA-dkv
          )
DELTA AIR LINES, INC.,   )
          )
   Defendant.    )

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND
## DENYING MOTION TO EXCLUDE PLAINTIFF'S EXPERT AS MOOT

---

Plaintiff Yahaya Mbeyu filed this action against his former employer, Delta Air Lines, Inc. ("Delta"), asserting claims of harassment, discrimination, and retaliation based on his national origin, African-Tanzanian. Plaintiff has brought his claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Section 1981 ("Section 1981"),[1] the Tennessee Human Rights Act ("THRA"), Tenn. Code. Ann. § 4-21-101, and the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304. (ECF No. 1.) Defendant has filed a motion for summary judgment, (ECF No. 43), and a motion to exclude Plaintiff's expert witness. (ECF No. 44.) Plaintiff has filed responses to Defendant's motions, (ECF Nos. 48, 49), and Defendant has filed a reply to Plaintiff's

---

[1] Plaintiff does not oppose the dismissal of his claim under Section 1981. (ECF No. 49, p. 1, n. 1.)

response to the motion for summary judgment. (ECF No. 50.) For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED**. Defendant's motion to exclude Plaintiff's expert is **DENIED** as moot.

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party,[3] and it "may not make credibility determinations or weigh the evidence."[4] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[6] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[7] When determining if summary judgment is appropriate, the

---

[2] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[5] *Celotex*, 477 U.S. at 324. Plaintiff failed to respond to Defendant's Statement of Undisputed Facts in a timely fashion as required by Local Rule 56.1(d), and he did not include a Statement of Additional Facts. On October 2, 2015, the Court denied Plaintiff's motion to submit his response out-of-time. (ECF No. 56.) Therefore, the facts in Defendant's statement have been considered to be undisputed. *See* LR 56.1(d).

[6] *Matsushita*, 475 U.S. at 586.

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[8] The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."[9]

Background

In April 2012, Plaintiff was an aircraft loading agent in Defendant Delta's "Below Wing" department.[10] (ECF No. 43-2, Def's Undisputed Facts; ECF No. 49, Pl's Response, p. 2.) Plaintiff was allegedly harassed by an African-American co-worker, Marcus Crutcher, who threatened to "take his eyes out" and said that he hated "the African guys." (ECF No. 1, Cmpl. ¶14; ECF No. 43-3, Pl's Dep., pp. 91, 97.) Plaintiff alleges that, after he complained to his supervisors, Crutcher continued to harass and stalk him. (*Id.*, pp. 103, 107-108, 112, 221.) Plaintiff also alleges that several other co-workers made derogatory remarks to him about his national origin and his foreign accent. (*Id.*, pp. 111-113, 120.)

Plaintiff further alleges that he was discriminated against when his written warning concerning misloading a live animal on an aircraft was increased to a more serious corrective action notice ("CAN") and he was demoted in September 2012. (ECF

---

[8] *Id.* at 251–52.

[9] *Celotex*, 477 U.S. at 322.

[10] Below Wing employees work on the ramp and are responsible for loading contents onto aircrafts prior to takeoff and unloading contents upon landing. ECF No. 43-2, Def's Undisputed Facts, ¶4.

No. 1, Cmplt. ¶¶ 53-54.) Plaintiff claims that his warning was harsher than the written counseling issued to Rick Sherrill, a Caucasian employee who had a similar loading error. He also claims that his termination because he had a restricted driver's license was discriminatory in that other employees of different races with restricted licenses were not terminated. (*Id.*, ¶ 54.) Plaintiff contends that his termination was also in retaliation for complaining about the alleged harassment and discrimination. (*Id.*, ¶ 61.)

In its motion for summary judgment, Delta contends that Plaintiff's harassment claims fail because there is no evidence that Crutcher's alleged threat was based on Plaintiff's national origin. Delta claims to have conducted an investigation following Plaintiff's complaint about Crutcher and submits that Crutcher did not make any derogatory or threatening comments to Plaintiff following the investigation. (ECF No. 43-1, Def's Mot. Summ. Judg.)

Delta further contends that any other allegedly harassing conduct was neither severe nor pervasive enough to constitute actionable harassment. Additionally, the conduct was never reported to Delta, nor were Plaintiff's supervisors aware of any such conduct so as to constitute liability on Delta's part. (*Id.*)

As for the alleged discriminatory disciplinary action concerning the loading of the animal, Delta asserts that Sherrill, the comparator, was not similarly-situated because he sought guidance from his supervisor prior to incorrectly loading a live animal, while Plaintiff only sought guidance after he had incorrectly loaded an animal. (*Id.*)

Concerning Plaintiff's termination, Delta states that it has a consistently enforced policy that all Below Wing employees working outside on the ramp must possess a valid,

unrestricted driver's license. When Plaintiff was unable to obtain an unrestricted driver's license, he was terminated in accordance with Delta's legitimate, non-discriminatory policy. Delta argues that Plaintiff cannot show that he was a victim of discrimination or retaliation in that he was treated the same as other similarly-situated employees. (*Id.*)

Plaintiff's Hostile Environment Claims

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[11] Courts analyze claims under Title VII and the THRA identically, as the "stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws."[12] Thus, the Court's "analysis and conclusions concerning the Title VII claims apply equally to parallel claims brought under THRA."[13]

Discrimination that is "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment" is actionable under Title VII and the THRA as a hostile environment claim.[14] Accordingly, conduct that is not severe or pervasive enough to create an objectively hostile or abusive work

---

[11] 42 U.S.C. § 2000e–2(a)(1) (2012).

[12] *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996); *see also Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n. 1 (6th Cir. 2008); *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 602 (Tenn. Ct. App. 2007) (the analysis of a hostile work environment claim is the same under Title VII and the THRA).

[13] *Jackson v. Bd. of Educ. of Memphis City Sch. of Memphis, Tenn.*, 494 F. App'x. 539, 543 n. 1 (6th Cir. 2012) (citation omitted); Tenn. Code Ann. § 4–21–311(e) (codifying *McDonnell Douglas* burden shifting framework in THRA cases).

[14] *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

environment that a reasonable person would find hostile or abusive is not actionable.[15] The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."[16] Conduct that is "merely offensive" is insufficient to support a hostile work environment claim.[17]

In determining whether there is a hostile work environment, the Court must look to the totality of the circumstances.[18] Among the factors to be considered are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[19] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[20]

Because Plaintiff has no direct evidence of discrimination, the *McDonnell Douglas*[21] burden-shifting framework applies to his claims. To establish a prima facie case of a hostile work environment, Plaintiff must show that (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his national origin; (4) the harassment unreasonably

---

[15] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

[16] *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998).

[17] *Harris*, 510 U.S. at 21.

[18] *Williams v. General Motors*, 187 F.3d 553 (6th Cir. 1999).

[19] *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 355 (6th Cir. 2005) (quoting *Harris*, 510 U.S. at 23).

[20] *Bourini v. Bridgestone/Firestone N. Am. Tire, LLC*, 136 F. App'x 747, 750-51 (6th Cir. 2005).

[21] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

interfered with his work performance and created an intimidating, hostile, or offensive work environment that seriously affected his psychological well-being; and (5) the existence of employer liability.[22]

In the present case, it is undisputed that Plaintiff is a member of a protected class, i.e., African-Tanzanian, and that Plaintiff was subjected to unwelcome behavior by his co-workers.[23] Delta contends that Plaintiff cannot establish the third, fourth, and fifth prongs of a prima facie case – that the harassment was based on his national origin, that it was so severe and pervasive that it created a hostile work environment, and that Delta was liable for the harassment.

In support of his contention that the harassment was based on his national origin, Plaintiff points to the following evidence in the record. Various African-American co-workers, including Crutcher, made offensive comments to Plaintiff regarding his national origin and his foreign accent.[24] Crutcher told Plaintiff that he "hated Africans."[25] Lamar Caldwell, Kim Catron, and Cleo Brewer would "just look [at] me funny and start

---

[22] *Boutros v. Canton Reg'l Transit Auth.*, 997 F.2d 198, 202-03 (6th Cir. 1993). The elements necessary to make a prima facie showing vary depending on the type of discrimination alleged. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575–76 (1978). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007).

[23] The facts are stated for the purpose of deciding this motion only.

[24] ECF No. 43-3, Pl's Dep., p. 95.

[25] *Id.* Delta points out that Crutcher denied making this statement. ECF No. 50, Def's Reply, p. 3.

laughing like something wrong with me."[26] Brewer told him he did not need to talk to a female co-worker, that he needed to go talk to his people "over there in Africa where they don't have no clothes," that Africans did not know anything about football, and that no one understood what he was saying.[27] Catron said "[Y]ou little African, you don't know nothing," and Joyce Beckon said, "[Y]ou don't have black women pretty like that in Africa. All black women in African they don't wear clothes."[28] Plaintiff contends that his co-workers also ignored his radio calls, refused to answer the Real Time assignments, and disciplined him for being late to a gate, despite his having a valid reason.[29]

The trier of fact could find, based on this evidence, in particular the remarks about "Africa," that the harassment was based on Plaintiff's national origin. Remarks that are not explicitly racial or based on national origin may still contribute to a hostile work environment.[30] Because there is a disputed issue of fact as to whether the harassment complained of was based on Plaintiff's national origin, Delta is not entitled to summary judgment on the third prong of Plaintiff's prima facie case.

However, Delta is entitled to summary judgment on Plaintiff's harassment claim because Delta took reasonable steps to end the harassment by Crutcher and it was

---

[26] *Id.*, p. 107-108.

[27] *Id.,* pp. 110, 217, 219.

[28] *Id.*, pp. 217, 220.

[29] ECF No. 43-3, Pl's Dep., p. 149-154.

[30] *See Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999) ("[E]ven though a certain action may not have been specifically racial in nature, it may contribute to the plaintiff's proof of a hostile work environment if it would not have occurred but for the fact [of his protected status]."); *Calderon v. Ford Motor Credit Co.*, 300 F. App'x. 362, 369 (6th Cir. 2008) (Co-workers' teasing the plaintiff about her accent every time she spoke constituted evidence of a hostile environment based on national origin.)

unaware of the other co-worker harassment.  When a harasser is a co-worker, the employer is liable if it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action."[31]

In the present case, the only co-worker against whom Plaintiff lodged a complaint was Crutcher.[32] Plaintiff never formally complained about the alleged comments of his other co-workers.[33] Moreover, Plaintiff's supervisors never witnessed any employee make derogatory, discriminatory, or harassing comments to Plaintiff regarding his national origin.[34] Consequently, Delta cannot be held liable for the alleged harassment of Plaintiff's other co-workers because it was not aware of that harassment.

Plaintiff's argument that Delta should have known about the harassment by his co-workers because it knew of the harassment by Crutcher is without merit.[35] Plaintiff himself testified in his deposition that the non-Crutcher co-worker harassment occurred after he complained of Crutcher's behavior.[36] Therefore, Delta could not have discovered the alleged harassment as a result of the investigation concerning Plaintiff's complaint about Crutcher.

---

[31] *Hafford*, 183 at 506.

[32] ECF No. 43-3, Pl's Dep., pp. 111-113, 120.

[33] *Id.,* pp. 111-113, 120; ECF No. 43-9, Forts Aff., ¶ 23; ECF No. 43-6, Stout Aff., ¶ 8; ECF No. 43-4, Strong Aff., ¶ 20.

[34] ECF No. 43-9, Forts Aff., ¶ 24; ECF No. 43-8, Foster Dec., ¶ 5; ECF No. 43-6, Stout Aff., ¶ 9 ; ECF No. 43-4, Strong Aff., ¶ 21.

[35] ECF No. 49, Pl's Response, p. 12 ("Delta knew or should have known that Mr. Mbeyu's co-workers were harassing him at work because Mr. Mbeyu complained about co-worker harassment by Mr. Crutcher, and [the] follow up on this complaint; yet his concerns were ignored.")

[36] ECF No. 43-3, Pl's Dep,, p. 239.

Plaintiff claims to have reported the non-Crutcher harassment to his supervisor Deborah Strong. However, Ms. Strong testified that Plaintiff filed no formal complaints with her about the alleged harassment but, instead, generally complained about working with his co-workers and about "bickering" in the department.[37] According to Ms. Strong regarding the Real Time Department employees,[38] "I will say they all had problems with each other. This group of men that worked in this office could not get along. And it was, 'You're taking too long for lunch. You're missing from your position. I don't know why you assigned this person this task. You're doing your job wrong. Answer the phone. Close the door. You leave your lunch out on the table.' They were always bickering like high school kids, like middle school kids, middle school boys, always."[39]

Plaintiff himself testified that his conversation with Ms. Strong about his co-workers concerned complaints from his co-workers that he was not pronouncing their names correctly when he called them out for assignments.[40] He has pointed to no evidence in the record from which the trier of fact could find that he complained to Ms. Strong about national origin based harassment as opposed to merely relaying complaints from his co-workers about his own performance.

---

[37] ECF No. 43-7, Strong Dep., pp. 111-112, 122 ("He complained about working with a lot of – they all complained about working with each other. Formal complaints, no.")

[38] Plaintiff worked in the Real Time Department until September 2012 when he began working on the ramp. ECF No. 43-3, Pl's Dep., pp. 59-60, 73. The Real Time personnel were responsible for assigning particular flights to the aircraft loading agents in Airport Customer Services. *Id.*, pp. 60-64.

[39] ECF No. 43-7, Strong Dep., p. 28.

[40] ECF No. 43-3, Pl's Dep., pp. 239-40.

Even if Plaintiff's conversation with Ms. Strong rises to the level of a complaint of harassment within the meaning of Title VII and the THRA, the alleged conduct was not severe or pervasive enough to be actionable. "[I]solated incidents of alleged rude or boorish behavior are not sufficient to establish a hostile work environment claim, because Title VII was not meant to create a 'general civility code,' and the 'sporadic use of abusive language, [protected characteristic]-related jokes, and occasional teasing' are not sufficient to establish liability."[41] Any complaints made to Ms. Strong did not constitute complaints of harassment which should have put Delta on notice of actionable harassment.

Plaintiff also claims that his performance leader, Roderick Forts, an African-American, engaged in harassing conduct towards him.[42] Plaintiff claims that Forts asked him "where he was from."[43] This allegation, even if true, does not rise to the level of severe and pervasive harassment. It was not frequent, physically threatening, or humiliating, nor did it interfere with Plaintiff's work performance. It was an isolated question which a reasonable person would not perceive as objectively hostile or abusive.[44]

---

[41] *Clark*, 400 F.3d at 32. *See also Fasone v. Clinton Twp.*, 1998 WL 165147, at *1 (6th Cir. Apr. 3, 1998) (hostile work environment claim failed when plaintiff alleged "constant harassment" but only identified "a few specific discriminatory comments").

[42] ECF No. 43-3, Pl's Dep., p. 217.

[43] *Id.*

[44] *See Bourini*, 136 F. App'x at 750-51 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"); s*ee also Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008) (the plaintiff must show that the environment was both objectively and

In contrast to the other co-worker harassment complaints, it is undisputed that Delta was made aware of Plaintiff's complaints about Crutcher when Plaintiff complained to Arthur Foster, his performance leader.[45] However, the record shows that Delta promptly investigated the complaint and took action to remedy the harassment.

Foster submitted the complaint to his supervisor, Tim Stout, took a statement from Crutcher, and separated Plaintiff and Crutcher pending resolution of the investigation.[46] The individuals who allegedly heard the threat were also interviewed.[47] Subsequently, the harassment by Crutcher ceased.[48] Summary judgment is appropriate when no further harassment occurred following an employer's remedial action.[49]

Plaintiff argues that Delta's investigation was not sufficient because Delta did not perceive the complaint as one of national origin discrimination. Whether Delta perceived Plaintiff's complaint as one of national origin discrimination is not relevant. The purpose of an investigation is to stop inappropriate conduct. Had Delta failed to investigate based on its perception of the complaint, then its perception would be relevant. However, the

---

subjectively hostile; that is, the conduct was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim subjectively regarded the environment as abusive.)

[45] ECF No. 43-2, Def's Undisputed Facts, ¶¶ 14-17.

[46] ECF No. 43-8, Foster Dec., ¶¶ 7, 9.

[47] ECF No. 43-3, Pl's Dep., p. 105.

[48] *Id.*, p. 217 (Q. "Did Mr. Crutcher ever make any comment to you after – after you complained about that he was going to take your eyes out about your national origin?" A. "No comment, just come around and look at me funny.")

[49] *See Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349–350 (6th Cir. 1988).

undisputed facts show that Delta conducted an investigation into Plaintiff's complaint and that, following the investigation, Crutcher made no more derogatory comments.

An employer will be liable for co-worker harassment only if it "failed to take prompt and appropriate remedial action" after learning of the harassment."[50] An employer must "take steps reasonably calculated to terminate the harassment and respond appropriately based on the available information.[51] In the present case, the Court finds as a matter of law that Delta took reasonable steps to end the harassment by Crutcher. Accordingly, Delta is entitled to summary judgment on Plaintiff's hostile environment claims.

<u>Plaintiff's Discriminatory Discipline Claims</u>

Next, Plaintiff alleges that he was discriminated against when he was issued a written warning and demoted in September 2012 after misloading a live animal on an aircraft. Absent direct evidence of discrimination, the *McDonnell Douglas* burden-shifting scheme is used to determine whether a discrimination claim should be submitted to a jury based on circumstantial evidence.[52] Under this framework, Plaintiff bears the initial burden of proving a prima facie case of discrimination.[53] Plaintiff must show that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly-

---

[50] *Theus v. GlaxoSmithKline*, 452 F. App'x 596, 600-01 (6th Cir. 2011) (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)).

[51] *Id.* (citation omitted).

[52] *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).

[53] *Id.*

situated, non-protected employees.[54]  Delta contends that Plaintiff cannot meet the fourth prong of a prima facie case.

"On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry."[55]  "[A] plaintiff in a race discrimination action 'has the burden of proving by a preponderance of the evidence a prima facie case.'"[56]  The key question is always whether the plaintiff has presented sufficient evidence to permit a reasonable jury to conclude that he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination.[57]

On September 7, 2012, as part of his job duties, Plaintiff loaded a dog onto a Boeing 737 bound for Los Angeles by placing it in a compartment with no air system.[58]  Had the dog remained in the compartment, it would have died.[59]  Plaintiff was uncertain where the animal should be loaded on the aircraft and, rather than contact his performance leader who was available via radio, Plaintiff released the aircraft from the gate before seeking assistance.[60]  As a result, Delta was required to involve the FAA,

---

[54]  *Id.*

[55]  *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000) (applying the *McDonnell Douglas* framework to a sex-discrimination claim).

[56]  *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) (quoting *Burdine*, 450 U.S. at 252–53).

[57]  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

[58]  ECF No. 43-3, Pl's Dep., p. 77; ECF No. 43-9, Forts Aff., ¶ 10.

[59]  ECF No. 43-3, Pl's Dep., pp. 77-79; ECF No. 43-9, Forts Aff., ¶ 11.

[60]  ECF No. 43-3, Pl's Dep., pp. 75-76; ECF No. 43-9, Forts Aff., ¶¶ 12-13; ECF No. 43-6, Stout Aff., ¶ 11.

which contacted the aircraft and requested that it divert back to the Memphis airport.[61] To ensure a safe landing, the aircraft was instructed to dump fuel prior to landing.[62] Due to the unexpected landing, the aircraft also required inspection and refueling prior to re-takeoff.[63] In addition to these costs, the passengers were delayed in reaching their destinations.[64]

As a result, Plaintiff was issued a Corrective Action Notice ("CAN") and was relieved of his loading duties.[65] Plaintiff contends that the disciplinary action was discriminatory because, in October 2012, less than thirty days later, Ricky Sherrill, Plaintiff's Caucasian co-worker, committed a nearly identical loading error and yet merely received a written warning.

Delta contends that it is entitled to summary judgment on this claim because Sherrill is not a proper comparator in that Sherrill and Plaintiff did not engage in nearly identical conduct. Similarly situated employees are ones who have "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[66] In determining whether an allegedly comparable employee is similarly situated, the ultimate question is whether "all

---

[61] ECF No. 43-9, Forts Aff., ¶ 15.

[62] *Id.*, ¶ 16.

[63] *Id.*, ¶ 17.

[64] *Id.*, ¶ 18.

[65] *Id.* ¶ 20.

[66] *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

of the relevant aspects of [his] employment situation were 'nearly identical' to those of the [comparator's] employment situation."[67]

Here, Delta has pointed to the following undisputed facts to show that Sherrill and Plaintiff were not similarly situated. Sherrill sought assistance from his performance leader, Charles Hollinger, before loading the animal and prior to releasing the aircraft from the gate.[68] Hollinger approved the loading.[69] In contrast, only after the aircraft had left the gate did Plaintiff seek guidance from a coworker, who informed him that the dog was in the wrong bin; however, he still did not seek guidance from his performance leader, Forts.[70] By the time Plaintiff inquired about his loading error, it was too late to stop the aircraft from taking off.[71] Because Sherrill followed the proper procedure and reached out to Hollinger prior to loading the animal, he received a written warning rather than a CAN.[72] Hollinger also was disciplined.[73]

As evidence of discrimination, Plaintiff asserts that Timothy Stout, the station manager, recommended that he receive a written warning, while Forts pushed to have the written warning increased to a CAN, which is a more serious disciplinary action in that,

---

[67] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998); *Clayton v. Meijer*, 281 F.3d 605, 611 (6th Cir. 2002) (Courts should not demand an exact correlation but, instead, should seek "relevant similarity" (citation omitted).)

[68] ECF No. 43-9, Forts Aff., ¶ 20.

[69] ECF No. 43-6, Stout Aff., ¶ 18.

[70] ECF No. 43-9, Forts Aff., ¶ 14; ECF No. 43-6, Stout Aff., ¶ 13.

[71] ECF No. 43-3, Pl's Dep., p. 80; ECF No. 43-9, Forts Aff., ¶ 15; ECF No. 43-6, Stout Aff., ¶ 14.

[72] ECF No. 43-6, Stout Aff., ¶ 19.

[73] *Id.*, ¶ 20.

according to Plaintiff, it prevents an employee from transferring to another department or bidding.[74] He contends that the CAN prevented his applying for an above-wing position for which no driver's license was needed.[75]

Delta does not dispute that Forts recommended that a CAN be issued. However, Delta has presented undisputed evidence that both a CAN and a written warning prevent an employee from transferring to or bidding on an above-wing position.[76] Accordingly, Forts's recommendation had no impact on Plaintiff s ability to transfer.

The fact that Sherrill followed the proper procedure and asked his performance leader prior to releasing the aircraft about how to load an animal and Plaintiff did not makes Sherrill an improper comparator.[77] Because Sherrill is not a proper comparator, Plaintiff has failed to make a prima facie showing of discrimination, and Delta is entitled to summary judgment on this claim.

<u>Plaintiff's Discriminatory Termination Claims</u>

Plaintiff claims that his termination was discriminatory. Delta contends that it is entitled to summary judgment because Plaintiff cannot establish a prima facie case of discrimination with regard to his termination in that he was not qualified for the position

---

[74] Plaintiff does not dispute that a written warning was appropriate.

[75] ECF No. 49, Pl's Response, pp. 4-5.

[76] ECF No. 43-2, Def's Undisputed Facts, ¶ 70; Exhibit 4 to Taylor Aff.

[77] Plaintiff contends that he took reasonable steps to see if the dog was loaded properly, including checking with the crew as Forts had instructed and checking with Lauren McCraven, a loading coordinator. However, Plaintiff sought guidance from McCraven after the aircraft was loaded and preparing to leave the gate. ECF No. 43-2, Def's Undisputed Facts, ¶¶ 31-32. At that point, it was too late to remedy the error.

that he held and he has failed to identify a proper comparator to show that he was similarly situated to a non-protected employee who was not terminated.

To establish a prima facie case of discriminatory termination, a plaintiff must show that (1) he is a member of a protected group; (2) he was subject to an adverse employment action; (3) he was qualified for the position from which he was fired; and (4) he was treated differently than employees outside of the protected class for the same or similar conduct.[78] If the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."[79] If the defendant meets this burden, the plaintiff must prove that the reason offered by the defendant is merely pretextual.[80] In the summary judgment context, "a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale."[81]

In November 2012, Plaintiff requested time off to attend a court appearance because he had been arrested for a DUI in May 2012.[82] Delta requires that all Below Wing employees maintain an unrestricted driver's license.[83] Accordingly, Department Manager Deborah Strong told Plaintiff to let her know the results of the court proceeding since he was required to have an unrestricted driver's license to be employed as a Below

---

[78] *Donald v. Buckman Labs., Inc.*, 527 F. App'x. 443, 447 (6th Cir. 2013).

[79] *McDonnell Douglas*, 411 U.S. at 802.

[80] *Id.* at 804.

[81] *Carter v. Toyota Tsusho Am., Inc.*, 529 F. App'x. 601, 609 (6th Cir. 2013) (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012)) (internal quotation marks omitted).

[82] ECF No. 43-4, Strong Aff., ¶ 6.

[83] ECF No. 43-5, Taylor Aff., ¶ 5.

Wing employee.[84]  Following his court appearance, Plaintiff advised Delta that he had been issued a restricted driver's license and presented a court order stating that he was permitted to drive for work purposes.[85] The restricted license did not meet Delta's requirement that all Below Wing employees maintain a valid, unrestricted driver's license.[86] As a result, Plaintiff was suspended and given sixty days to obtain an unrestricted driver's license.[87] At the close of the sixty days, Plaintiff did not present an unrestricted driver's license. Therefore, Strong submitted a request for termination, which was approved, and Plaintiff's employment was terminated effective January 30, 2013.[88]

Plaintiff contends that his termination was discriminatory because other Below Wing employees had restricted driver's licenses but were allowed to keep their jobs. Plaintiff specifically points to Delta employees Lamar Caldwell, Julie Jackson, and Tim Thomas, who he alleges were permitted to continue working with a restricted driver's license. Delta has presented unrefuted evidence that it was not ever aware that Jackson and Thomas had restricted driver's licenses and that Caldwell presented proof of an unrestricted license within a few days of Delta's request.[89]

---

[84] *Id.*, ¶ 7.

[85] ECF No. 43-3, Pl's Dep., pp. 181-185; Exhibits 3-5 to Dep.; ECF No. 43-4, Strong Aff., ¶ 8.

[86] ECF No. 43-4, Strong Aff., ¶ 10; ECF No. 43-5, Taylor Aff., ¶ 8.

[87] ECF No. 43-4, Strong Aff., ¶ 11; ECF No. 43-5, Taylor Aff., ¶ 6.

[88] ECF No. 43-4, Strong Aff., ¶ 13; ECF No. 43-5, Taylor Aff., ¶ 9.

[89] ECF No. 43-6, Stout Aff., ¶¶ 23-24.

Plaintiff claims that it was "an open and obvious, known fact in Department 120, that Ms. Jackson had [a] breath alcohol ignition interlock device on her vehicle."[90] Plaintiff's allegation is not sufficient to create a question of material fact because there is no evidence in the record that Delta management was aware that Jackson had a breath alcohol ignition interlock device on her vehicle. To the contrary, the undisputed facts establish that Delta management was not aware of the device or that Jackson ever failed to have an unrestricted driver's license during her employment.[91] Based on this evidence, the Court finds that Jackson, Thomas, and Caldwell are not proper comparators to Plaintiff.

Plaintiff acknowledges that he himself told Delta about his restricted license, while other employees "flew under the radar" and "their suspended licenses were not discovered until after sufficient time had passed which allowed them to re-instate their suspended licenses before Delta knew of the violation."[92] Delta cannot be held liable for not taking action concerning situations that it had no knowledge of. The undisputed facts establish that, while Delta did not police the status of employee driver's licenses, it enforced its policy when presented with information which called into question the status of a Below Wing employee's driver's license.

Although Plaintiff does not agree with Delta's policy of requiring unrestricted driver's licenses, it is undisputed that Delta does, in fact, require Below Wing employees

---

[90] ECF No. 49, Pl's Response, p. 18.

[91] ECF No. 43-2, Def's Undisputed Facts, ¶ 68.

[92] ECF No. 49, Pl's Response, pp.4-5.

to maintain a valid, unrestricted driver's license and Plaintiff's restricted license did not meet that requirement.[93]  Plaintiff was suspended, pursuant to Delta's policy, and given sixty days to obtain an unrestricted driver's license; when he did not present an unrestricted driver's license at the close of the sixty days, his employment was terminated because he was no longer qualified to hold his position.[94]

Plaintiff's discriminatory termination claim fails because he has not established a prima facie case by showing that he was qualified for the position and he was treated differently than similarly-situated non-protected employees. Even if Plaintiff could satisfy his prima facie burden, his claim still fails because Delta terminated his employment for a legitimate non-discriminatory/non-retaliatory reason unrelated to his national origin, and Plaintiff has pointed to no evidence in the record showing that the reason was pretextual.[95]

Delta has presented unrefuted evidence that it has consistently enforced its driver's license policy.  During the 2012 to 2014 time period, fifteen other employees, in addition to Plaintiff, were terminated for this same reason. Of those suspended and terminated, six were white, six were African-American, and two were Hispanic.[96]  The same day that Plaintiff was suspended, Vernard Winton, a Below Wing employee, was suspended for

---

[93] ECF No. 43-4, Strong Aff., ¶ 10; ECF No. 43-5, Taylor Aff., ¶ 8.

[94] ECF No. 43-4, Strong Aff., ¶ 11; ECF No. 43-5, Taylor Aff., ¶¶ 6, 9.

[95] Once a plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Plaintiff must then demonstrate that the employer's proffered reason for the adverse action was pretextual. *Manzer v. Diamond Shamrock Chems.Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

[96] ECF No. 43-5, Taylor Aff., ¶ 10.

not having an unrestricted driver's license.[97] However, Winton provided documentation that he had secured a valid, unrestricted driver's license within the sixty-day period and was reinstated.[98]

Plaintiff's argument that, since his restricted driver's license permitted him to drive at work, he should not have been subject to the policy, does not establish pretext. Courts do not sit as "super" human resources departments; instead, the appropriate inquiry is whether a given policy is applied in a discriminatory fashion.[99] Because no reasonable juror could find that Delta's reason for terminating Plaintiff was a pretext for discrimination, Delta is entitled to summary judgment on this claim.

<u>Plaintiff's Retaliation Claims</u>

Plaintiff claims that the disciplinary action taken against him after the misloading of the animal incident and his termination for having a restricted driver's license constituted unlawful retaliation for his April 2012 complaint about Crutcher. To establish a prima facie case of retaliation, Plaintiff must show that (1) he engaged in protected activity; (2) this exercise of protected rights was known to Delta; (3) Delta thereafter took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action.[100] If the plaintiff succeeds in making out the elements of a prima facie case of retaliation, as with

---

[97] ECF No. 43-4, Strong Aff., ¶ 17.

[98] *Id.*, ¶ 18.

[99] *See Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) (The role of the court is "to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.")

[100] *See Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

all claims analyzed using the *McDonnell Douglas* burden-shifting framework, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for the termination.[101]  If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that the reason was a pretext for retaliation. "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion throughout the process."[102]

According to Delta, Plaintiff has pointed to no evidence of causation between his complaint and his discipline and/or termination. To show causation, Plaintiff must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action."[103]  The Supreme Court clarified in *University of Texas Southwestern Med. Ctr. v. Nassar*, "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m) [Title VII's status-based discrimination provision]. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." [104]   This "but-for causation" requires evidence that Delta would not have disciplined or terminated Plaintiff if he had not made a complaint about Crutcher's harassment.[105]

---

[101]  *See Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

[102]  *Id.*

[103]  *Fuelling v. New Vision Med. Labs. LLC*, 284 F. App'x 247, 260 (6th Cir. 2008).

[104]  133 S. Ct. 2517, 2533 (2013).

[105]  The Sixth Circuit has continued to apply the *McDonnell Douglas* framework to retaliation claims post-*Nassar*. *See, e.g.,  Bishop v. Ohio Dep't of Rehab. & Corr.*, 529 F. App'x. 685, 698–99 (6th Cir. 2013);  *Nicholson v. City of Clarksville*, 530 F. App'x. 434, 445–46 (6th

Delta has submitted evidence that the performance leader to whom Plaintiff complained about Crutcher and who investigated the complaint, Foster, was not involved in any manner with Plaintiff's subsequent discipline and termination, as he retired in August 2012.[106] Additionally, the supervisors who recommended Plaintiff's discipline and termination were not involved in the investigation of Plaintiff's complaint. Plaintiff complained about Crutcher in early 2012. Forts did not begin serving as Plaintiff's performance leader until May 2012 and did not recommend him for a disciplinary action until September 2012.[107] Likewise, Strong began serving as department manager in November 2012 and did not recommend Plaintiff for termination until January 2013.[108]

Furthermore, Delta had a legitimate non-discriminatory reason to discipline Plaintiff, i.e., the misloading of a live animal. And, as discussed above, Plaintiff has pointed to no evidence to show that the reason was pretextual. The undisputed evidence also shows that Delta had a legitimate non-discriminatory reason to terminate Plaintiff, i.e., he did not have an unrestricted driver's license. Again, Plaintiff has pointed to no non-speculative evidence to show that the reason was pretextual.[109] Accordingly, Plaintiff's retaliation claim fails as a matter of law.

---

Cir. 2013).

[106] ECF No. 43-8, Foster Dec., ¶ 2.

[107] ECF No. 43-9, Forts Aff., ¶¶ 2, 20.

[108] ECF No. 43-4, Strong Aff., ¶ 3.

[109] Plaintiff contends that, even if Delta had a valid reason for terminating him, had Delta not issued a CAN to him, he would have been eligible to bid on and apply for a transfer to an above the wing' position despite his restricted driver's license. ECF No. 49, Pl's Response, p. 19. However, had Plaintiff received the written warning originally suggested by Stout, as discussed above, he still would have been barred from applying for an above the wing position because

<u>TPPA and Common Law Claims</u>

Plaintiff has asserted claims for retaliatory discharge under the common law of Tennessee and a cause of action under the TPPA, Tenn. Code Ann. § 50–1–304. In order to assert a common law retaliatory discharge claim, a plaintiff must show that: (1) an employment-at-will relationship existed; (2) he was discharged; (3) the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) a substantial factor in the employer's decision to discharge him was his exercise of protected rights or his compliance with clear public policy.[110] In order make out a TPPA claim, a plaintiff must establish: (1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, illegal activities as defined under the TPPA; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination.[111] "Illegal activities" are "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50–1–304(a)(3).

---

written warnings and CANs both preclude employees from transferring in this situation. ECF No. 43-2, Def's Undisputed Facts, ¶ 70.

[110] *Clark v. Hoops, LP*, 709 F.Supp.2d 657, 670 (W.D. Tenn. 2010) (internal quotation marks omitted) (quoting *Franklin v. Swift Trans. Co., Inc.*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006)).

[111] *Clark*, 709 F.Supp.2d at 669–70 (internal alterations and quotation marks omitted) (quoting *Franklin*, 210 S.W.3d at 528).

The statutory and common law causes of action for retaliatory discharge are similar, with the main difference being that the common law cause of action requires a plaintiff to show that his activity was a substantial factor in bringing about his discharge, whereas the statutory cause of action requires a plaintiff to show it was the sole reason for his discharge.[112] A factor is "substantial" if it was "an important or significant motivating factor for the discharge."[113] In analyzing both types of claims, Tennessee courts follow the *McDonnell Douglas* burden-shifting framework.[114]

In the present case, Plaintiff's statutory claim fails because he cannot establish an "exclusive causal relationship" between his complaint about Crutcher and his discipline and/or termination, and his common law claim fails because he cannot show that his complaint was a "substantial factor" in Delta's decision. As previously discussed, Plaintiff does not dispute that he made the loading error leading up to his discipline or that he failed to contact his performance leader prior to releasing the aircraft from the gate. Likewise, Plaintiff does not dispute that he possessed a restricted driver's license. He merely maintains that he should have been permitted to drive with his restricted license but points to no comparators who were permitted to drive under the same

---

[112] *Clark*, 709 F.Supp.2d at 670 (citing *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002)).

[113] *Walls v. Tenn. CVS Pharmacy, LLC*, 21 F.Supp.3d 889, 897 (M.D. Tenn. 2014) (citation omitted).

[114] *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999).

circumstances.  Consequently, Delta is entitled to summary judgment on Plaintiff's state law claims.[115]

Summary and Conclusion

In its motion for summary judgment (ECF No. 43), Defendant Delta Airlines, Inc., has pointed to undisputed facts in the record that show it is entitled to judgment as a matter of law on both Plaintiff's federal and state law claims. Accordingly, the motion for summary judgment is **GRANTED**.  Defendant's motion to exclude Plaintiff's expert (ECF No. 44) is **DENIED** as moot.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 5, 2015

---

[115] *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 28 (Tenn. 2011) (summary judgment in favor of employer on plaintiff's TPPA affirmed when plaintiff did not dispute that he actually committed the infractions leading up to his termination).